Opinion issued July 20, 2006                









     






In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01071-CV




CLARENDON NATIONAL INSURANCE COMPANY, Appellant

V.

DENNIS ROSS THOMPSON, Appellee




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2005-16954




* * *




NO. 01-06-00049-CV




CLARENDON NATIONAL INSURANCE COMPANY, Appellant

V.

DENNIS ROSS THOMPSON, Appellee




On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2005–16953




* * *




NO. 01-06-00450-CV




IN RE CLARENDON NATIONAL INSURANCE COMPANY, Relator




Original Proceeding on Petition for Writ of Injunction




O P I N I O N These two appeals and one original proceeding arise from a no-answer default
judgment obtained by Dennis Ross Thompson (Thompson) against Clarendon
National Insurance, Company (Clarendon). Clarendon filed a petition for bill of
review to challenge the default judgment. The trial court granted Thompson’s motion
for summary judgment, denying Clarendon’s petition for bill of review. Clarendon
also filed a separate suit, seeking a temporary injunction to enjoin Thompson from
executing on the default judgment. The trial court denied Clarendon’s request for
temporary injunctive relief. 
          In appellate cause number 01–05–01071–CV, Clarendon contends, in two
issues, that the trial court erred in granting the motion for summary judgment on its
bill of review claim.


 In appellate cause number 01–06–00049–CV, Clarendon
asserts one issue challenging the trial court’s denial of its request for a temporary
injunction.


 Clarendon has also filed a related petition for writ of injunction in this
Court, cause number 01–06–00450–CV.
          We reverse the judgment of the trial court granting Thompson’s motion for
summary judgment and remand the proceeding to the trial court; affirm the judgment
of the trial court denying Clarendon’s request for a temporary injunction; and deny
Clarendon’s petition for writ of injunction.
Background
          Thompson filed suit against Clarendon and its third-party administrator,
Americomp Billings Solutions, Inc. On May 5, 2003, the trial court signed an
interlocutory default judgment against Clarendon in favor of Thompson. The
judgment recited that Clarendon’s registered agent had been served with process and
that the citation and proof of service had been filed with the trial court. The judgment
further recited that Clarendon had not filed an answer to Thompson’s suit. On June
10, 2003, the trial court signed an order granting Thompson’s motion to nonsuit his
claims against Americomp Billings Solutions. 
          On December 27, 2004, Clarendon received a letter from Thompson’s attorney
pursuing collection of the judgment. On March 15, 2005, Clarendon filed a petition
for bill of review directly attacking the judgment. Clarendon alleged that it had not
been notified by the district clerk’s office of the default judgment. Clarendon
complained that, because it did not have notice of judgment, it was deprived of its
right to file a motion for new trial.
          Also on March 15, 2005, in a separate action, Clarendon filed a petition for
temporary injunction seeking to enjoin Thompson from executing on the default
judgment. Clarendon asserted that it would succeed on its bill of review and alleged
that it feared Thompson would quickly spend any funds he obtained from executing
the default judgment, leaving Clarendon without meaningful recourse against
Thompson when it succeeded on its bill of review.
          In the bill of review proceeding, Thompson filed a motion for summary
judgment and a supplemental motion for summary judgment to which Clarendon
responded. The trial court granted Thompson’s motion for summary judgment,
without stating the basis. In the temporary injunction proceeding, the trial court
denied Clarendon’s requested relief. 
          In separate appeals, Clarendon challenges the trial court’s summary judgment
and the trial court’s order denying its temporary-injunction request. Clarendon has
also filed a petition for writ of injunction in this Court, seeking to enjoin the
disbursement of its funds to Thompson, which the trial court had placed in
receivership to satisfy the default judgment.
Appeal of Summary Judgment (No. 01–05–01071–CV)
          Clarendon presents two issues challenging the trial court’s granting of
Thompson’s motion for summary judgment.



A.      Standard of Review
          Though he did not expressly state whether he sought traditional or no-evidence
summary judgment, Thompson’s motion for summary judgment reads as a hybrid
summary judgment motion in which Thomson raised both traditional and no-evidence
points. This is an important distinction because the two forms of summary judgment
invoke different standards of review. Compare Tex. R. Civ. P. 166a(c), with Tex. R.
Civ. P. 166a(i) (setting forth the different burdens borne by movant and nonmovant
under each section).
          The movant for traditional summary judgment must show that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d
546, 548 (Tex. 1985). A defendant moving for traditional summary judgment must
conclusively negate at least one essential element of each of the plaintiff’s causes of
action or conclusively establish each element of an affirmative defense. Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive
only if reasonable people could not differ in their conclusions. City of Keller v.
Wilson, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes its right
to summary judgment as a matter of law, the burden shifts to the plaintiff to present
evidence raising a genuine issue of material fact, thereby precluding summary
judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678–79
(Tex. 1979). When reviewing a traditional summary judgment, we take as true all
evidence favorable to the nonmovant, and we indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor. Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004). 
          In contrast, the party moving for no-evidence summary judgment must assert
only that there is no evidence of one or more essential elements of a claim or defense
on which the non-movant would have the burden of proof at trial. See Tex. R. Civ.
P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a
fact issue on the challenged elements. See id. A no-evidence summary judgment is
improper if the respondent brings forth more than a scintilla of probative evidence to
raise a genuine issue of material fact. Tex. R. Civ. P. 166a(i); Forbes Inc. v. Granada
Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence
exists when the evidence is so weak as to do no more than create a mere surmise or
suspicion of a fact. Forbes, 124 S.W.3d at 172. More than a scintilla of evidence
exists if it would allow reasonable and fair-minded people to differ in their
conclusions. Id. As with a traditional summary judgment, we view the evidence in
the light most favorable to the non-movant, disregarding all contrary evidence and
inferences. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). 
          If the trial court has granted summary judgment without specifying the ground
or grounds relied on for the ruling, summary judgment will be affirmed on appeal if
any of the theories advanced is meritorious. See State Farm Fire & Cas. Co. v. S.S.,
858 S.W.2d 374, 380 (Tex. 1993).
B.      Analysis of Grounds Asserted to Support Summary Judgment
          Clarendon’s first issue challenges the grounds offered by Thompson in support
of his motion for summary judgment. 
          1.       Did Clarendon’s negligence in failing to answer defeat its claim for
bill of review?

          Thompson asserted, as his first ground for summary judgment, that Clarendon’s
bill of review should be denied, as a matter of law, because it was Clarendon’s
negligence in failing to file an answer that prevented it from asserting its defense to
the suit. As cited by Thompson, a bill of review plaintiff must ordinarily plead and
prove (1) a meritorious defense to the underlying cause of action, (2) which the
plaintiffs were prevented from making by the fraud, accident or wrongful act of the
opposing party or official mistake, (3) unmixed with any fault or negligence on their
own part. Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex. 2004).
          In contrast, Clarendon contends, as it did in the trial court, that whether its
failure to answer was unmixed with its own negligence is irrelevant under the facts
pled. Clarendon points out that it did not allege that it was denied the opportunity to
answer Thompson’s suit. Rather, Clarendon alleged in its bill of review petition that
it was deprived of the opportunity to request a new trial because of official mistake,
that is, because the district clerk did not send notice of judgment. 
          Relying on Hanks v. Rosser, Clarendon asserts that a plaintiff alleging that it
was denied its right to request a new trial because of official mistake is not required
to show that it was free from negligence in failing to answer. Instead, when such
allegations are involved, the bill of review plaintiff must show that its failure to
answer was not intentional or as a result of conscious indifference. 378 S.W.2d 31
(Tex. 1964). We agree with Clarendon.


 See id. at 34–35.
          This is not to say that negligence is not a consideration in bill of review
proceedings in which the plaintiff alleges that it lost the opportunity to request a new
trial. In its opinions following Hanks, the supreme court reiterated that a plaintiff
must show an absence of negligence with regard to the loss of the defensive
opportunity of which the plaintiff complains in its bill of review petition.


 See
Gracey v. West, 422 S.W.2d 913, 915–16 (Tex. 1968); Petro-Chemical Transport,
Inc. v. Carroll, 514 S.W.2d 240, 246 (Tex. 1974). Thus, when a plaintiff complains
that it lost the opportunity to request a motion for new trial, the relevant inquiry with
regard to the plaintiff’s negligence becomes whether its negligence resulted in it
losing the right to file a motion for new trial. See Petro-Chemical Transport, 514
S.W.2d at 246 (requiring bill of review plaintiff to prove absence of negligence in
failing to file a motion for new trial or appeal when it complains of lost meritorious
motion for new trial or appeal).
          To the extent that Thompson’s motion for summary judgment alleged that
Clarendon’s failure to request a new trial was caused by its negligence in failing to
answer, such assertion does not succeed. Hanks instructs us that Clarendon had “two
rights or remedies” in the default-judgment proceeding: (1) to file an answer to
prevent a default judgment and (2) to file a motion for new trial within the prescribed
time period. Hanks, 378 S.W.2d at 34. 
          In Hanks, the bill of review plaintiff had not filed a timely answer and had been
deprived of his right to file a motion for new trial because of misinformation received
from the court clerk. Id. at 33. The Hanks court determined that a plaintiff’s lost
opportunity to file a motion for new trial, caused by official misinformation, was the
proper subject of a bill of review, even if the plaintiff was negligent in failing to
answer.


 Id. at 34. In its analysis, the court noted that the bill of review plaintiff had
been negligent in failing to timely answer the suit, but “not in his failure to timely file
a motion for new trial.” Id. Referring to the plaintiff’s negligence in failing to
answer, the Hanks court concluded that such negligence was not of “controlling
importance” and that the plaintiff “was nevertheless entitled to file a motion for new
trial.” Id. 
          Applying Hanks, we conclude that, even if Clarendon was negligent in failing
to answer, Thompson did not demonstrate that such negligence was of “controlling
importance” with regard to Clarendon’s failure to file a motion for new trial. See id. 
We hold that Thompson’s first ground for summary judgment, that Clarendon was
negligent in failing to file its answer, does not support summary judgment in this
case.
          2.       Did Clarendon present evidence that its failure to file its answer was
not intentional or as a result of conscious indifference?

          In its second ground for summary judgment, Thompson raised a no-evidence
challenge to the issue of whether Clarendon acted intentionally or with conscious
indifference in failing to answer the suit. See Tex. R. Civ. P. 166a(i). On appeal,
Clarendon contends that it filed sufficient evidence to prove this element.
          Clarendon offered the affidavit of Virgil Miranda, who averred, in part, as
follows:
I was a mail clerk for Clarendon National Insurance Company. . . . I
have been told that in December of 2002, I signed for a Federal Express
package containing a lawsuit filed by Dennis Ross Thompson against
Clarendon National Insurance Company. Due to the volume of mail we
received and because so much time has passed, I do not have any
recollection of receiving the document. When I received a document in
the mail room, my job was to take steps to see that the document was
delivered to the appropriate individual. While I do not recall what
happened to Mr Thompson’s lawsuit papers, I can state that if Mr
Thompson’s lawsuit was not delivered to the appropriate individual, this
was a mistake. I would never have ignored or disregarded any lawsuit
against Clarendon National Insurance Company.
Clarendon also presented documentation from Federal Express indicating that
Miranda had signed for the package containing Thompson’s lawsuit information.
          Clarendon also offered the affidavit of Alex Prophete, the office services
manager, who supervised the mail room in December of 2002. Prophete stated that,
at that time, there were three employees who worked in Clarendon’s mail room,
including him and Miranda. According to Prophete, the mail room would receive
three of four buckets or mail on Mondays, containing 250–300 pieces of mail. On
other days of the week, the mail room would receive one bucket of mail. Prophete
explained that the mail room employees knew that if a piece of mail pertained to a
legal matter, then it was delivered to the office of Eduardo Simeon, Jr., the legal
administrative manager for Clarendon. 
          Prophete stated that it was his “understanding” that on December 20, 2002,
Miranda signed for a package containing a lawsuit filed by Thompson against
Clarendon and Americomp Billings Solutions. Prophete explained that it was then
Miranda’s responsibility, pursuant to Clarendon’s procedure, to immediately forward
the suit to Simeon. Prophete summed up what had occurred as follows:
The lawsuit never reached Mr. Simeon due to a mistake committed by
Mr. Miranda. Neither Mr. Miranda nor anyone in the mail department
would ever ignore or consciously disregard a lawsuit against
[Clarendon]. Mr. Miranda was a competent mail clerk and
conscientiously conducted his job duties. While employed as a mail
clerk, he never ignored or intentionally misplaced the mail. This was
obviously a mistake on the part of a mail room clerk in either sending
the lawsuit to an incorrect location or misplacing it.
          In addition, Clarendon filed Simeon’s affidavit, in which Simeon explained
that, as Clarendon’s legal administrative manager, any lawsuit received by Clarendon
was forwarded to him. Simeon determined which insurance policy applied and then
forwarded it to the appropriate third-party administrator for handling, which in this
case was Americomp Billings Solutions. 
          Simeon stated that it was his understanding that the lawsuit had been received
by Miranda, a mail room clerk. Simeon testified that “Mr. Miranda never forwarded
the lawsuit papers to me. . . . [H]ad the mail room correctly delivered Mr.
Thompson’s lawsuit to me in December of 2002, I would have promptly forwarded
that lawsuit to Americomp Billings Solutions.” Simeon explained that, when he
forwarded legal papers to a third-party administrator, a notation was made in a “legal
log” in his office. Simeon testified that he checked the log and found no notation that
Thompson’s suit had been received or forwarded by his office. 
          Simeon offered the following conclusion regarding the matter:
Based upon the above, it is clear that Virgil Miranda, a mail clerk in the
mail room, received the lawsuit in December of 2002, but mistakenly
did not forward it to my office. This obviously prevented me from
forwarding the suit to the appropriate TPA, Americomp Billings
Solutions , Inc. for handling and most importantly, resulted in the failure
to have an answer to the lawsuit timely filed. [Clarendon] did not ignore,
nor was it consciously indifferent, to the filing of Mr. Thompson’s
lawsuit. This was just a mistake.
          We must determine whether Clarendon presented more then a scintilla of
evidence that its failure to answer was neither intentional nor a result of conscious
indifference. Thompson objected that much of the testimony in the affidavits was
“conclusory.”


 Thompson asserted in the trial court that the affidavits do not
sufficiently detail how the suit papers were lost. 
          Although the affidavits contain some conclusory statements, they also contain
testimony explaining Clarendon’s procedures for handling service papers generally
and what is known about the Thompson papers specifically. The Federal Express
documents show that Miranda did receive the suit papers. The evidence offered by
Clarendon pinpoints that the break in the chain of forwarding the documents occurred
in the mail room. 
          As aptly stated by the supreme court in a factually similar case, “People often
do not know where or how they lost something–that is precisely why it remains
‘lost.’” Fidelity & Guar. Ins. Co. v. Drewery, 186 S.W.3d 571, 575 (Tex. 2006). We
are mindful that the “standard is one of intentional or conscious indifference—that
the defendant knew it was sued but did not care.” Id. at 575–76. The excuse offered
for failing to answer “need not be a good one to suffice.” Id. at 576.
          The evidence offered by Clarendon was not conclusory. Rather, it constituted
more than a scintilla of evidence to show that Clarendon’s failure to answer was not
intentional or as a result of conscious indifference. We hold that Thompson’s
assertion that Clarendon presented no evidence that it did not act intentionally or with
conscious indifference in failing to answer cannot support summary judgment.
          3.       Was it established, as a matter of law, that no official mistake
occurred?
                    a.       Notice of Interlocutory Default Judgment
          Referencing Rule of Civil Procedure 239a, Clarendon alleged in its amended
bill of review petition that it never received notice of judgment. See Tex. R. Civ. P.
239a (“Immediately upon the signing of the [default] judgment, the clerk shall mail
written notice thereof to the party against whom the judgment was rendered . . ., and
note the fact of such mailing on the docket.”). Clarendon contended that its non-receipt of notice deprived it of the opportunity to file a motion for new trial. 
          In his motion for summary judgment, Thompson asserted that Clarendon’s bill
of review must fail because the evidence showed, as a matter of law, that Clarendon
had received notice of the default judgment. To support his claim, Thompson offered
the affidavit of the civil court supervisor for the district clerk’s office, Marcella R.
Harris, who testified that she was familiar with the “policies, practices, and
procedures” used by the clerk’s office to send out notices. She stated that she was
also familiar with the Harris County Justice Information Management System
(“JIMS”) and the civil district clerks’ use of that system.
          Attached to Harris’s affidavit was a “a certified copy of JIMS Civil Court
Activity sheet” from the default-judgment proceeding. Harris testified that the
activity sheet reflected
that on May 05, 2003, an entry was made in JIMS system that the court
entered an interlocutory default judgment against Clarendon National
Insurance Company. Once such entry is made in JIMS, the system
automatically generates a formal notice of the court’s action. These
notices are addressed to persons listed in JIMS who are connected with
the litigation and will reflect who prevailed in the case and against
whom the judgment was rendered. The Clerk’s Office uses first class
mail to send these notices to all the parties in the case. 
Thompson presented evidence that the address shown in JIMS for Clarendon was its
proper address. Thompson also presented evidence that he had received notice of the
default judgment from the clerk’s office.
          In response, Clarendon offered the affidavits of three Clarendon employees, 
who testified that Clarendon had not received notice of judgment. Each employee
described his position with Clarendon and detailed the basis for his knowledge with
respect to non-receipt of notice of any judgment in Thompson’s suit. 
          Though Clarendon would have the burden at trial to show official mistake, the
burden of proof on this traditional summary judgment point falls on Thompson. See
Tex. R. Civ. P. 166a(c); Nixon, 690 S.W.2d at 548. In this context, we are mindful
that we take as true all evidence favorable to Clarendon, and we indulge every
reasonable inference and resolve any doubts in its favor. See Joe, 145 S.W.3d at 157. 
Here, Clarendon’s evidence denying receipt raised an issue of material fact on the
issue of whether the clerk sent notice of judgment, which could only be resolved by
the fact finder. See Texaco, Inc. v. Phan, 137 S.W.3d 763, 767 (Tex. App.—Houston
[1st Dist.] 2004, no pet.); see also Maxey v. Morrison, No. 01–88–00166–CV, 1989
WL 66231, at *4 (Tex. App.—Houston [1st Dist.] June 8, 1989, writ denied) (not
designated for publication) (reversing summary judgment because issue of material
fact was raised by bill of review petitioner when he offered affidavit stating that he
had never received notice of judgment, even though summary judgment movant had
offered affidavit from district clerk stating that she had sent notice). Thus, we hold
that Thompson’s claim that no official mistake occurred because Clarendon received
the interlocutory default judgment does not support summary judgment.
                    b.       Notice of Final Judgment
          In its response to Thompson’s motion for summary judgment and in its second
amended bill of review, filed after Thompson filed his motion for summary judgment,
Clarendon also claimed that it had not received notice of the final judgment, as
required by Rule of Civil Procedure 306a(3). See Tex. R. Civ. P. 306a(3) (“When the
final judgment or other appealable order is signed, the clerk of the court shall
immediately give notice to the parties or their attorneys of record by first-class mail
advising that the judgment or order was signed.”). Clarendon pointed out in its
response that Thompson had offered no evidence to show that Clarendon had
received a Rule 306a(3) notice.
          In his reply, Thompson asserted that Clarendon was not entitled to a Rule
306a(3) notice because “[a] signing of a non-suit is not a final judgment nor is it an
appealable order.” (Emphasis in original.) In contrast, Clarendon correctly asserted
that the interlocutory default judgment against it did not become final until the trial
court signed the order of nonsuit. See Sheraton Homes, Inc. v. Shipley, 137 S.W.3d
379 (Tex. App.—Dallas 2004, no pet.). “When a judgment is interlocutory because
unadjudicated parties or claims remain before the court, and when one moves to have
such unadjudicated claims or parties removed by severance, dismissal, or nonsuit, the
appellate timetable runs from the signing of a judgment or order disposing of those
claims or parties.” Farmer v. Ben E. Keith Co., 907 S.W.2d 495, 496 (Tex. 1995)
(citations omitted). Importantly, the time period in which Clarendon was required to
file its motion for new trial did not begin to run until the trial court signed the order
on the nonsuit on June 10, 2003. See Wembely v. Herrera, 11 S.W.3d 924, 928 (Tex.
1999).
          Thompson also asserted in his reply that Clarendon was not entitled to notice
of the order granting his nonsuit because Clarendon previously received notice of the
interlocutory default judgment. Without deciding its merit, this argument fails
because, as discussed, an issue of material fact exists regarding whether Clarendon
received notice of the default judgment. 
          Thompson further claimed that summary judgment was justified because
Clarendon had been served with process and was aware of the suit; thus, actual notice
was not required. We disagree. Rule 239a and Rule 306a(3) required the clerk to
send notice of judgment to Clarendon. See Tex. R. Civ. P. 239a, 306a(3). In
addition, the supreme court has held that when the other conditions required for bill
of review are satisfied, a bill of review may be predicated on the clerk’s failure to
send the notice of judgment. Petro-Chemical, 514 S.W.2d at 245. This is in line with
the recognition by the supreme court in Hanks that a defendant in a suit has two rights
and remedies: (1) to file an answer to prevent a default judgment and (2) to file a
motion for new trial within the prescribed time period. Hanks, 378 S.W.2d at 34. 
          4.       Conclusion Regarding Appeal of Summary Judgment
          Based on the reasons discussed above, we hold that none of the grounds raised
by Thompson can support summary judgment in this case. Thus, we hold that the
trial court erred in granting summary judgment against Clarendon on its request for
bill of review. 
          We sustain Clarendon’s first issue.



Appeal from Denial of Request for 
Temporary Injunction (No. 01–06–00049–CV)

          In its second appeal, Clarendon contends in one issue that the trial court abused
its discretion by denying its request for temporary injunction. 
          As mentioned, Clarendon filed a petition for temporary injunction the same day
that it filed its original bill of review petition. In the temporary injunction petition,
Clarendon requested the trial court to enjoin Thompson from executing on the default
judgment during the pendency of the bill of review proceeding. The trial court did
not decide the request for temporary injunction at that time, but apparently allowed
Clarendon to post a $300,000 bond while the bill of review proceeding was pending.
          After the trial court granted Thompson’s motion for summary judgment on
Clarendon’s request for bill of review, Clarendon amended its petition for temporary
injunction. Clarendon alleged that it had satisfied all of the requirements for a bill of
review. It contended that, should Thompson be allowed to execute on the default
judgment, it had “reason to believe” that Thompson would “spend and/or otherwise
dispose of such funds” before Clarendon had obtained an “order vacating and setting
aside the default judgment.” Clarendon alleged that “[a]t that point, it will be
impossible for [Clarendon] to recoup the funds that [Thompson] will have received
via execution” of the default judgment. Clarendon asserted that the temporary
injunction was necessary while its appeal of the summary judgment in the bill of
review proceeding was pending.
          Following an evidentiary hearing, the trial court denied Clarendon’s request for
temporary injunction. Clarendon brought this appeal asserting that the trial court
abused its discretion in denying its request.
A.      Standard of Review and Governing Legal Principles
          Whether to grant or deny a temporary injunction is a decision committed to the
sound discretion of the trial court and will be reversed only for a clear abuse of that
discretion. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). 
          A temporary injunction is an extraordinary remedy that does not issue unless
the party seeking relief pleads and proves three specific elements: (1) a cause of
action, (2) a probable right to recover on that cause of action, and (3) a probable,
imminent, and irreparable injury in the interim. Id. An injury is irreparable if the
party seeking the writ cannot be adequately compensated in damages or if the
damages cannot be measured by any certain pecuniary standard. Id. Probable injury
includes the consideration of whether there is no adequate remedy at law for damages. 
See T-N-T Motorsports, Inc. v. Hennessey Motorsports, 965 S.W.2d 18, 24 (Tex.
App.—Houston [1st Dist.] 1998, no pet.). 
          When we determine whether the trial court abused its discretion, we may not
substitute our judgment for that of the trial court unless its decision was so arbitrary
that it exceeded the bounds of reasonableness. Butnaru, 84 S.W.3d at 204; T-N-T
Motorsports, 965 S.W.2d at 21. Accordingly, we review the evidence submitted to
the trial court in the light most favorable to that court’s ruling, draw all legitimate
inferences from the evidence, and defer to the trial court’s resolution of conflicting
evidence. See Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); CRC-Evans
Pipeline, Int’l, Inc. v. Myers, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.]
1996, no writ).
          B.      Analysis of Whether Trial Court Abused its Discretion
          Thompson responded to Clarendon’s request for temporary injunction by
asserting, inter alia, that Clarendon had an adequate remedy at law. That is,
Clarendon could file suit against Thompson to recover the monies paid to him under
the default judgment in the event that Clarendon later prevailed on its bill of review. 
Clarendon maintained that it would never be successful in recovering the amount of
the default judgment from Thompson because he was without financial means to
satisfy such a judgment.
          In this regard, Clarendon introduced into evidence a stipulation showing that
Thompson had an annual income below $75,000, had no bank account with a balance
in excess of $10,000, and owned no non-exempt property worth in excess of $50,000. 
Based on this evidence, Clarendon asserted that should Thompson execute on the
$251,208.67 default judgement, it had “established” that it would suffer a probable,
imminent, and irreparable injury. We disagree.
          Here, the trial court could have concluded that Clarendon had not shown an
irreparable injury. Specifically, the trial court could have found that Clarendon could
be adequately compensated in damages and that the damages could be measured with
certainty. The trial court also could have concluded that, despite Thompson’s current
financial status, once he recovered the sum due under the default judgment, he would,
in fact, have adequate money to satisfy any judgment that Clarendon may obtain. 
Clarendon offered no evidence to support its allegation that Thompson would quickly
dissipate the default judgment monies once he received them. 
          We hold that Clarendon has not shown that the trial court abused its discretion
by denying its request for temporary injunction. 
          We overrule Clarendon’s sole issue.
Request For Writ of Injunction (No. 01–06–00450–CV)
          Clarendon has filed a petition for writ of injunction in this Court, seeking to
enjoin the disbursement of its funds to Thompson, which the trial court placed in
receivership to satisfy the default judgment. We deny Clarendon’s request for writ
of injunction and lift our stay of May 17, 2006.
Summary of Dispositions
          We reverse the trial court’s judgment in appellate cause number
01–05–01071–CV and remand for further proceedings. We affirm the trial court’s
judgment in appellate cause number 01–06–00049–CV. We deny Clarendon’s
petition for writ of injunction and lift our stay of May 17, 2006 in cause number
01–06–00450–CV. 




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Jennings, Hanks, and Higley.